IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 23, 2015 Session

## ROYAL PROPERTIES, INC. v. THE CITY OF KNOXVILLE, ET. AL.

**Appeal from the Chancery Court for Knox County**
**No. 186612-2     Hon. Daryl R. Fansler, Chancellor**

---

**No. E2014-01937-COA-R3-CV-FILED-AUGUST 25, 2015**

---

This is an appeal from a judgment in a certiorari review action. The petitioner sought approval for the construction of a surface parking lot as a use permitted on review in Knoxville, Tennessee. The Metropolitan Planning Commission denied the application. The petitioner appealed the denial to the Knoxville City Council, which failed to vote on the matter. The trial court upheld the de facto denial, holding that the Knoxville City Council had not exceeded its jurisdiction, followed an unlawful procedure, acted illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision. The petitioner appeals. For the reasons discussed herein, we reverse and remand this case to the trial court with instructions to remand to the Knoxville City Council for a definitive ruling on whether the requested surface parking lot is permissible as a use permitted on review.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II, JJ., joined.

Arthur G. Seymour and Taylor D. Forrester, Knoxville, Tennessee, for the appellant, Royal Properties, Inc.

Crista M. Cuccaro, Knoxville, Tennessee, for the appellee, the City of Knoxville.

Robert B. Frost, Jr., Knoxville, Tennessee, for the appellee, the Knoxville City Council.

**OPINION**

## I. BACKGROUND

The property at issue in this case is bounded by West Church Avenue, Gay Street, Cumberland Avenue, and Market Street in Knoxville, Tennessee. The applicable zoning regulations provide that the use of the property is determined by the base zone of the property, while the design of the property is regulated by an overlay district. The property is located in a C-2 Central Business District ("C-2 District") in an accompanying D-1 Downtown Design Overlay District ("D-1 Overlay District"). Appendix B, Article IV, Section 5 of the Knoxville Code ("the Code") provides that the D-1 Overlay District is "intended to foster attractive and harmonious development and rehabilitation in Downtown Knoxville that reflects the goals of adopted plans, and the principles of the downtown design guidelines."

Royal Properties, Inc. ("Petitioner") procured the property at issue in 1995. The property is currently divided into two parcels ("Parcel 1" and "Parcel 2"). Parcel 1 houses a parking structure commonly known as the Pryor Brown Garage. Parcel 2 consists of a surface parking lot. Petitioner procured permission from the Knox County Metropolitan Planning Commission ("the MPC") to construct the surface parking lot on Parcel 2 in 1996. The MPC limited its approval of the lot to a four-year period. However, neither Petitioner nor the MPC moved to review the conditional approval of the lot until 2013, when Petitioner filed an application with the MPC requesting approval to construct a surface parking lot on Parcel 1 as a use permitted on review. Construction of the new surface parking lot required the demolition of the Pryor Brown Garage.[1] The MPC staff instructed Petitioner to seek reapproval of the existing lot on Parcel 2 along with the expansion project intended for Parcel 1. Petitioner complied and amended its application to include the existing surface parking lot.

Appendix B, Article VII, Section 5 of the Code provides that a use permitted on review "may be established and maintained only with the approval of the [MPC]." Appendix B, Article IV, Section 2 of the Code lists "[p]arking facilities consistent with the adopted 'Downtown Plan'" as a use permitted on review in the C-2 District. As pertinent to this appeal, the Downtown Plan provides the following parking policies:

1. The peripheral parking concept established in the 1974 Plan is resoundingly affirmed; this policy can guide the provision of needed parking while at the same time, maintaining a dominant pedestrian atmosphere in the central core area.

---

[1] Petitioner also applied for a demolition permit from the Department of Operations, Plans Review and Inspections Division for the City of Knoxville. The permit was issued on March 20, 2014.

2. There shall be a strong bias in favor of short term (shopper/visitor) parking within the core area.

3. Multi-level garages, rather than surface lots, should generally be encouraged; architectural design of such garages should be sensitive to the surrounding buildings and open spaces.

Appendix B, Article V, Section 3 of the Code further provides the following development standards in determining whether a use should be permitted on review:

1. The use is consistent with adopted plans and policies, including the "General Plan" and the "One-Year Plan".

2. The use [is] in harmony with the general purpose and intent of these zoning regulations.

3. The use is compatible with the character of the neighborhood where it is proposed, and with the size and location of buildings in the vicinity.

4. The use will not significantly injure the value of adjacent property or by noise, lights, fumes, odors, vibration, traffic, congestion or other impacts detract from the immediate environment.

5. The use is not of a nature or so located as to draw substantial additional traffic through residential streets.

6. The nature of development in the surrounding area is not such as to pose a potential hazard to the proposed use or to create an undesirable environment for the proposed use.

The MPC staff recommended approval of the amended application, subject to the following conditions:

1. Meeting all applicable requirements of the Knoxville Downtown Design Review Board including but not limited to fencing, lighting and landscaping

2. Maintaining at least 50% of the parking spaces for transient (hourly/daily) parking

3.    Maintaining the visibility triangle at the intersection of Market St. and W. Church Av. as required by the Knoxville Zoning Ordinance

4.    Meeting all other applicable requirements of the Knoxville Zoning Ordinance or obtaining any required variances

5.    Meeting all applicable requirments of the Knoxville Engineering Dept.

Despite the staff's recommendation, the MPC denied the application by a 7-6 vote.

Petitioner filed a timely appeal of the denial of its application to the Knoxville City Council ("the City Council") pursuant to Appendix B, Article VII, Section 6 of the Code, which provides,

> Any person, firm or corporation aggrieved by any decision of the metropolitan planning commission or the board of zoning appeals may petition the city council to consider the same.
>
> * * *
>
> The city council shall consider de novo in public hearing and may affirm, modify, impose restrictions as provided in article VII, section 5 or overrule the action of the planning commission or board of zoning appeals.

Petitioner stated its reason for the appeal as follows:

> Pryor Brown Garage in the past has provided space for parking of approximately 150 cars.  It is a 4 story structure with the 4th and 3rd floors closed off because of roof and concrete deterioration.  The 2nd floor is only partially usable.  The available space for parking range from 20 to 35, depending on the weather conditions and falling concrete debris.  Continued partial use of the building is questionable and the cost of repairs according to experts is not economically feasible.
>
> It may be remembered that this building was slated for demolition in the 1990s when the property was owned by the US Government as the proposed site of a new federal building.  The highest and best . . . use of the site is for a landscaped, fenced, planted, lighted surface parking lot as recommended by the MPC professional staff.

A hearing was held at the monthly council meeting on November 26, 2013. The City Council entertained presentations from several speakers on both sides of the issue. Arthur Seymour, Jr. spoke on behalf of Petitioner. Mr. Seymour asserted that Petitioner had submitted a design proposal that was compliant with the D-1 Overlay District and that Petitioner had agreed to comply with the conditions set forth by the MPC staff. He noted that there was a present need for parking in the area. He alleged that Petitioner ultimately intends to develop the property and merely sought approval to use the property as a surface parking lot until a final development proposal could be created.

Marvin House, the CEO of Merit Construction, testified that the Pryor Brown Garage is beyond repair. He related that he had worked with Petitioner for more than a year to discover options for the use of the property. He ultimately determined that the Pryor Brown Garage is not a safe structure and that use of the property as a surface parking lot is the most viable option. He claimed that Bender Associates, a well-known structural engineering firm, concurred with his assessment.

Jamichael McCoy, General Manager of Republic Parking System in Knoxville, stated that the Pryor Brown Garage was a "liability for our employees and for pedestrians and different people in and out of the garage." He related that they implemented a plan to improve the facility before ultimately determining that it is beyond repair.

Kim Trent, Executive Director of Knox Heritage, urged the City Council to deny the appeal. She claimed that the Pryor Brown Garage is eligible for listing in the National Register of Historic Places. She related that the facility is a model for modern parking garages in areas where quality urban planning is a priority in the community. She related that the requested use of the property is in opposition to "the successful and accepted urban planning principles that have revived Downtown Knoxville and communities across the country." She further stated,

> The proposed use is not compatible with the character of the adjacent neighborhood, which is filled with significant National Register listed and eligible historic buildings such as the Bijou Theatre, St. John's Episcopal Church, Cherokee Building, Cate Building and others. Granting the Use on Review request will significantly injure the property values of the adjacent properties. There are now highly desirable and valuable residential buildings that if this is approved will now face an asphalt expanse an entire city block in size. Three, it is simply bad urban planning to allow an entire city block on our primary commercial and retail street to be nothing more than asphalt and it will result in a net loss of parking spaces on the site once the multi-level structure is taken down. This is being proposed on our award-winning "Great Street" recognized by the American Planning

Association as a national model for revitalization. Granting the Use on Review is not good planning and will harm downtown revitalization in general. This massive parking lot already breaks the appealing pedestrian connection to the Historic Bijou Theatre and the riverfront and discourages residents and tourists from exploring beyond Market Square and the 500 block of Gay Street. In addition, it disrupts the pedestrian connection that ties together . . . the City of Knoxville's revitalization efforts on Gay Street[] from the riverfront to Emory Place.

She noted that Petitioner previously promised to develop an office tower but now claims that it will take another 15 years to realize that promise. She believed that the facility is "ripe for redevelopment as valuable downtown parking or as premium mixed use retail/residential space." She alleged that there are at least two interested buyers who sought to preserve the Pryor Brown Garage if Petitioner agrees to sell.

David Dewhirst, a developer and contractor, claimed that it is possible to restore facilities like the Pryor Brown Garage. He believed that constructing a surface parking lot in place of the current facility would have a significant adverse impact upon adjoining properties and Downtown Knoxville in general.

In rebuttal, Mr. Seymour asserted that the evidence supports the need for a surface parking lot and the inability to utilize the current parking facility. He stated that the property should be brought in compliance with the D-1 Overlay District guidelines and that the expansion of the existing surface parking lot is the most feasible option given the current state of the market.

Following arguments, the City Council engaged in deliberations. Councilman Marshall Stair noted that the Central Business Improvement District ("the CBID") had denied a request for a grant to rehabilitate the Pryor Brown Garage because Petitioner had neglected the facility for approximately 18 years. He asserted that Petitioner's attempt to procure a grant to rehabilitate the Pryor Brown Garage contradicts any assertion that the facility cannot be rehabilitated.

At the request of Councilman Stair, Bill Lyons, the City of Knoxville's Chief Policy Officer, asserted that structured parking is preferable to surface parking. He noted that structured parking facilities provide more parking and allow for a mixed use of valuable pieces of property. He provided that the CBID's current policy anticipated the replacement of surface parking lots for mixed use, structured parking facilities.

Councilman Stair noted that the Pryor Brown Garage plays a very important role in the area and was "built perfectly" for the intent of Downtown Knoxville. He believed

that surface parking lots are "deadly for creating a vibrant street and corners." He further stated,

> This building does do important work on Church and Market and having a surface parking lot . . . is not consistent with the plan. It's not in harmony with the surrounding properties. It's incompatible with the character of that area. It would significantly affect the value of adjacent properties, and for all these reasons, I'm not supporting the appeal and hoping no one will make a motion and we'll be able to move on.

At the request of Councilman Daniel Brown, Ms. Trent provided that one of the potential buyers sought to build a new development on the property, while two other potential buyers sought to convert the Pryor Brown Garage into a mixed use building with residential units and retail establishments. Mr. House then admitted that the Pryor Brown Garage could be preserved at a significant cost.

Following some further discussion concerning the significant cost to renovate the Pryor Brown Garage, Mayor Madeline Rogero noted that the appeal failed due to a lack of a motion.

Petitioner then filed a petition for a writ of certiorari with the Knox County Chancery Court. Petitioners named the City of Knoxville and the City Council (collectively "Respondents") as respondents. Petitioner argued that the City Council's de facto denial of the appeal was "illegal, arbitrary and capricious because it failed to make a proper motion to approve or deny" the appeal. Petitioner claimed that the improper consideration of the demolition of the Pryor Brown Garage was a "pre-textual justification for an illegal, arbitrary and capricious denial" of a requested use permitted on review "that complied with the applicable regulations and zoning ordinances." Respondents asserted that the City Council's decision was supported by material evidence and that the "deliberative process was far from arbitrary and capricious" as reflected by the City Council's specific consideration of the use on review standards. The court dismissed the petition for writ of certiorari, holding that the City Council had not exceeded its jurisdiction, acted illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision. This timely appeal followed.

## II.   ISSUES

We consolidate and restate the issues raised on appeal as follows:

A.      Whether the trial court abused its discretion by denying the petition for a writ of certiorari.

B.      Whether Petitioner is entitled to attorney fees pursuant to Tennessee Code Annotated section 29-37-101.

## III.   STANDARD OF REVIEW

This action is brought pursuant to Tennessee Code Annotated section 27-8-101, et seq., which governs the extraordinary remedy of common law writ of certiorari, and section 27-9-101 et seq., which provides procedures for review by writ of certiorari of decisions by boards and commissions.

An action by the City Council in considering Petitioner's appeal is an administrative or quasi-judicial act rather than a legislative act. *See McCallen v. City of Memphis*, 786 S.W.2d 633, 638-39 (Tenn. 1990). The proper method of judicial review is through the common law writ of certiorari. Tenn. Code Ann. § 27-9-101, et seq.; *McCallen*, 786 S.W.2d at 639. "[T]he primary consequence of a determination that a party must seek judicial review through the common law writ of certiorari procedure is that the trial court must apply a limited standard of review to decisions already made by administrative officials, rather than address the issue de novo as the initial decision maker." *State ex rel. Moore & Assocs., Inc. v. West*, 246 S.W.3d 569, 574 (Tenn. Ct. App. 2005). Furthermore,

> Reviewing courts may grant relief only when the board or agency whose decision is being reviewed has exceeded its jurisdiction or has acted illegally, arbitrarily, or fraudulently.
>
> Review under a common-law writ of certiorari does not extend to a redetermination of the facts found by the board or agency whose decision is being reviewed. The courts may not (1) inquire into the intrinsic correctness of the decision, (2) reweigh the evidence, or (3) substitute their judgment for that of the board or agency. However, they may review the record solely to determine whether it contains any material evidence to support the decision because a decision without evidentiary support is an arbitrary one.

*Leonard Plating Co. v. Metro. Gov't of Nashville and Davidson Cnty.*, 213 S.W.3d 898, 903-04 (Tenn. Ct. App. 2006) (internal citations and footnotes omitted).

"The issue of whether there is sufficient evidence to support a zoning decision is a question of law." *BMC Enters., Inc. v. City of Mt. Juliet*, 273 S.W.3d 619, 624 (Tenn. Ct. App. 2008) (citing *Wilson County Youth Emergency Shelter, Inc. v. Wilson Cnty.*, 13 S.W.3d 338, 342 (Tenn. Ct. App. 1999)). We review questions of law de novo with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006). However,

> [a] common-law writ of certiorari is not available as a matter of right. The petition for a writ is addressed to the trial court's discretion. Accordingly, appellate courts must review a trial court's decision either to grant or to deny a petition for common-law writ of certiorari using the "abuse of discretion" standard of review.

*Heyne v. Nashville Bd. of Pub. Educ.*, 380, S.W.3d 715, 730 (Tenn. 2012) (internal citations omitted). If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

## IV.   DISCUSSION

### A. & B.

In considering Petitioner's appeal, the City Council was serving in an administrative capacity and was tasked with exercising its quasi-judicial powers. *See McCallen*, 786 S.W.2d at 639 (providing that "a crucial test in distinguishing legislative from administrative acts is whether the action taken (resolution or ordinance) makes new law or executes one already in existence"). Petitioner's appeal of the denial of its application for approval to construct a surface parking lot as a use permitted on review required the City Council to apply existing law in a de novo review hearing pursuant to Appendix B, Article VII, Section 6 of the Code, which provides as follows:

> Any person, firm or corporation aggrieved by any decision of the metropolitan planning commission or the board of zoning appeals may petition the city council to consider the same.

\* \* \*

The city council shall consider de novo in public hearing and may *affirm*, *modify*, *impose restrictions* as provided in article VII, section 5 or *overrule* the action of the planning commission or board of zoning appeals.

(Emphasis added). The City Council's failure to rule upon the issue before it as required by the Code was an abdication of its responsibility to the trial court. The City Council's failure to act "destroys any purpose that could be set forth in favor of having such an administrative body." *Hoover, Inc. v. Metro Bd. of Zoning Appeals*, 924 S.W.2d 900, 907 (Tenn. Ct. App. 1996) (considering the denial of a permit request by operation of law as a result of the abstention by several board members). With these considerations in mind, we reverse and remand this case to the trial court with instructions to remand to the Knoxville City Council for a definitive ruling on whether the requested surface parking lot is permissible as a use permitted on review. The party aggrieved by the ruling may then file a petition for writ of certiorari with the trial court. Accordingly, the remaining issues are pretermitted as premature.

## V.    CONCLUSION

The judgment of the trial court is reversed, and the case is remanded to the trial court with instructions to remand to the Knoxville City Council for a definitive ruling on whether the requested surface parking lot is permissible as a use permitted on review. Costs of the appeal are taxed equally to the appellants, the City of Knoxville and the Knoxville City Council.

_____
JOHN W. McCLARTY, JUDGE