IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 20, 2019 Session

### REBECCA M. LITTLE v. THE CITY OF CHATTANOOGA, TENNESSEE

**Appeal from the Chancery Court for Hamilton County**
No. 18-0003          Pamela A. Fleenor, Chancellor

_____

#### No. E2018-00870-COA-R3-CV
_____

Plaintiff appeals the dismissal of her complaint, which ostensibly alleged declaratory judgment, inverse condemnation, and due process violations. We vacate the dismissal of Plaintiff's procedural due process claim because that claim was not actually addressed in the trial court's order of dismissal. The trial court's judgment is affirmed in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Vacated in Part and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which, CHARLES D. SUSANO, JR., and THOMAS R. FRIERSON, II, JJ., joined.

Rebecca Little, Chattanooga, Tennessee, Pro se.

Melinda Jane Foster and Misty Lavender Foy, Chattanooga, Tennessee, for the appellee, City of Chattanooga.

### OPINION

### Background[1]

---

[1] Because this case was decided on a motion to dismiss, we take the facts from the complaints and documents attached thereto. *See generally* Tenn. R. Civ. P. 10.03 (requiring certain documents to be attached to pleadings and stating that "[e]very exhibit so attached . . . shall be a part of the pleading for all purposes"); *see also* **Belton v. City of Memphis**, No. W2015-01785-COA-R3-CV, 2016 WL 2754407, at *4 (Tenn. Ct. App. May 10, 2016) (holding that motion to dismiss for failure to state a claim was not converted into a motion for summary judgment through consideration of documents attached to the pleading pursuant to Rule 10.03).

On November 8, 2016, Defendant/Appellee the City of Chattanooga ("the City") adopted Resolution No. 28838, updating its right-of-way abandonment policy.[2] The resolution stated that its purpose was to "give guidance to citizens, staff, and elected officials regarding the closure and abandonment of rights-of-way. It is intended to form a basis of rationale and process for decisions on right-of-way closure and abandonment requests." The resolution further provided that the City's policy was to only "recommend the permanent closure and abandonment of rights-of-way when it is demonstrated that the public has no further need or interest to retain the right-of-way and that its abandonment is necessary to achieve a significant private or public interest."

Resolution No. 28838 thereafter provided specific guidance for how abandonment issues would be addressed through a tiered classification system. Under Tier 1, for example, rights-of-way that are dedicated for public use and maintained by the City cannot be closed or abandoned "unless a suitable replacement is provided."[3] Applications seeking to abandon a Tier 1 right-of-way "will be reviewed using the review factors and according to the tenets of this policy." In contrast, Tier 2 rights-of-way are dedicated for public use, not maintained by the City, and only partially opened or unopened. These rights-of-way may be closed following a review of the factors pursuant to the tenets of the policy. Finally, Tier 3 rights-of-way are not physically opened. These rights-of-way are reviewed in the same manner as rights-of-way under Tier 2.

Resolution No. 28838 then detailed specific factors to guide review of closure applications:

1. Width of right-of-way.
2. Presence of or potential for the location of utilities.
3. Currently open to vehicular, bicycle, or pedestrian traffic.
4. Potential for future use or which provides future connections to the existing street pattern or could provide needed services, and which are integral to the community's future development (i.e, access to abutting property, bypass for other streets, parking, pedestrian connectivity, etc.).
5. Type/conditions of surface.
6. Does the topography/grade impede the potential use of a right-of-way for vehicles, bicycles, or pedestrians?
7. Will the closure and abandonment landlock any property. If so, has a subdivision plat been submitted which eliminates this situation?
8. Identification of a suitable replacement.

---

[2] The resolution was not materially different than the previous policy, which was adopted as early as 1997.

[3] Resolution No. 28838 generally defines "abandonment" as the "[r]elinquishing [of a] local government's right to use or maintain a public right-of-way." In turn, a "closed" right-of-way is defined as one that has been abandoned by the local government through an ordinance. We have chosen to use the terms "abandonment" and "abandoned" in this Opinion for ease of reading.

Finally, the resolution provided a specific process for abandonment requests:

> **Application.** The Regional Planning Agency (RPA) will accept petitions for closure and abandonment of any right-of-way created by plat, deed or by drawing, by ordinance/resolution and which are of public record according to the tenets of this policy.
>
> **Review.** Rights-of-way will be reviewed by various public agencies, City departments, utility companies, and the Chattanooga Department of Transportation (CDOT) according to the tenets of this policy to determine its current use and its potential for future development.
>
> **Planning Commission.** The Chattanooga-Hamilton County Regional Planning Commission will review and make a recommendation to the Chattanooga City Council according to the tenets of this policy and the recommendations of the reviewers.
>
> **City Council.** Based on the recommendation of the planning commission and CDOT, City Council will take final action to approve or deny a right-of-way closure and abandonment.

In August 2016, City resident Taylor Vickers petitioned the Chattanooga Regional Planning Commission ("Planning Commission") for abandonment of the alley behind her property at 249 Jarnigan Avenue.[4] The stated purpose of the abandonment application was for abutting property owners to add onto their property. In September 2016, property owners affected by the application received a letter notifying them that Ms. Vickers had filed an application for the abandonment of the alley. The notice indicated that property owners could attend a public hearing of the Planning Commission on October 10, 2016 to either "support or oppose the proposed change."

One of these property owners was Plaintiff/Appellant Rebecca Little ("Plaintiff"), who owns the property located at 412 Thompson Street. Plaintiff's primary concern was that the alley provided the best access to her property "for parking and future development." According to Plaintiff, although her property is also fronted by a street, the topography of her property prevents off-street parking in the front of her home due to a fifteen foot retaining wall that covers the frontage of her property. It does not appear that Plaintiff's home has any off-street parking currently or at the time that she purchased the property in 2016. Plaintiff contends however, that she purchased the property because the alley made it feasible to create off-street parking in the back of her home in the future.

The meeting occurred as scheduled on October 10, 2016. Plaintiff and another neighbor spoke in opposition to the abandonment. On the same day, the Planning

---

[4] The application noted that the alley was "[u]nopened" and therefore appears to fall within either Tier 2 or Tier 3 of the City's abandonment policy.

Commission voted to recommend denying the application for abandonment. Pursuant to the process outlined in Resolution No. 28838, the issue then came before the Chattanooga City Council ("City Council") on November 15, 2016; the issue was deferred so that a council member could meet with the neighborhood. During this time, Plaintiff was in communication with council members concerning her opposition to the abandonment.[5] At the December 13, 2016 City Council meeting, the ordinance abandoning the subject alley was passed on the first reading. On December 20, 2016, the ordinance to abandon the alley was approved upon second reading and thereafter signed by the mayor. The ordinance specifically provided that it would "take effect two (2) weeks from and after its passage." According to Plaintiff, although she was present for these meetings, at neither the December 13 nor December 20 City Council meeting were residents who opposed the abandonment allowed to speak.

On January 2, 2018, Plaintiff filed a complaint for inverse condemnation and declaratory judgment against the City of Chattanooga ("the City" or "Appellee") in the Hamilton County Chancery Court ("trial court").[6] Plaintiff thereafter filed an amended complaint on January 12, 2018. The amended complaint primarily sought to invalidate the ordinance, but also requested damages resulting from the interference with her property. Plaintiff requested this relief on the basis of inverse condemnation, the City's failure to comply with Resolution No. 28838 in granting the abandonment application, failure to show a rational basis for the abandonment ordinance, a violation of the Open Meetings Act, and violations of both substantive and procedural due process rights under the Tennessee and United States Constitutions.

The City responded by filing a motion to dismiss and/or for judgment on the pleadings, in which it alleged that Plaintiff's claims for inverse condemnation and declaratory judgment were improper and time-barred. Specifically, the City argued that Plaintiff was seeking to challenge a factual determination made in accordance with an existing law, rather than seeking to invalidate an ordinance itself. As such, the City alleged that filing a common law writ of certiorari was the proper procedure rather than a declaratory judgment action, and further alleged that the sixty-day statute of limitation for filing a writ of certiorari was lapsed. With regard to the Plaintiff's substantive and procedural due process claims, the City argued that the passing of the ordinance was a valid exercise of police power and that Plaintiff had not suffered an injury to any vested right. Moreover, the City reiterated that even if Plaintiff had a valid due process claim, the proper remedy would be a writ of certiorari, for which the time to file had passed. In addressing Plaintiff's inverse condemnation claim, as well as her claim related to the Tennessee Open Meetings Act, the City again argued that the claims were time-barred.

---

[5] Plaintiff alleges that there was one meeting between a council member and the neighbors in favor of the abandonment that she was not provided sufficient notice and an opportunity to attend.

[6] Plaintiff was a law student at time of the filing of the complaint, but was a licensed attorney at the time of oral argument in this cause.

Ultimately, the City asserted that the gravamen of Plaintiff's complaint was that the ordinance passed in December of 2016 was invalid and as such, any claims related to the ordinance should have been brought via a writ of certiorari. Accordingly, the City asserted that the time to file the writ would have been by February 20, 2017, sixty days after the passing of the ordinance.

The trial court entered an order denying the City's motion for judgment on the pleadings but granting the motion to dismiss on April 16, 2018, largely adopting the City's arguments as to Plaintiff's claims. Specifically, the trial court found that it lacked jurisdiction to decide Plaintiff's claim for declaratory judgment because Plaintiff failed to join all of the necessary parties, namely, other property owners affected by the ordinance. The trial court went on to find that the passage of the abandonment ordinance constituted an administrative decision in that the determination was made pursuant to existing standards and guidelines. As such, the trial court agreed with the City that Plaintiff should have filed a petition for a writ of certiorari and that the time to do so had passed. In addressing Plaintiff's claim for inverse condemnation, the trial court determined that Plaintiff had actual notice of the alleged taking when the ordinance was passed on December 20, 2016, and then had twelve (12) months in which to bring an inverse condemnation claim. As such, the trial court also concluded that this claim was time-barred. Finally, the trial court determined that Plaintiff's allegations with regard to the Tennessee Open Meetings Act were merely conclusory and failed to state a claim for which relief could be granted. Plaintiff's complaint was dismissed in its entirety, and a timely notice of appeal was filed May 14, 2018.

**Issues Presented**

Plaintiff raises several issues, which are taken from her brief and slightly restated:

1. Whether the trial court applied an incorrect legal standard in determining that Plaintiff failed to join necessary parties and in subsequently determining that the court lacks subject matter jurisdiction to adjudicate the claim.
2. Whether the trial court committed error in finding that the complaint fails to state a justiciable controversy.
3. Whether the trial court committed a legal error in its determination that the City's street closure was an administrative, rather than legislative act, and therefore that Plaintiff should have filed a writ of certiorari rather than an action for declaratory judgment.
4. Whether the trial court subsequently erred in finding that plaintiff failed to timely file her complaint.
5. Whether the trial court erred by holding that Plaintiff failed to timely file an action for inverse condemnation.

6. Whether the trial court erred in ignoring and dismissing Plaintiff's claim that the City's adoption of the ordinance violated her procedural due process rights.

## Standard of Review

The trial court in this case granted the City's motion to dismiss on the basis of both failure to state a claim under Rule 12.02(6) of the Tennessee Rules of Civil Procedure and lack of subject matter jurisdiction under Rule 12.02(1). According to the Tennessee Supreme Court,

> A motion to dismiss based upon Tennessee Rule of Civil Procedure 12.02(6) challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. **Phillips v. Montgomery Cnty.**, 442 S.W.3d 233, 237 (Tenn. 2014) (quoting **Webb v. Nashville Area Habitat for Humanity, Inc.**, 346 S.W.3d 422, 426 (Tenn. 2011)).
> A defendant filing a motion to dismiss "admits the truth of all the relevant and material allegations contained in the complaint, but ... asserts that the allegations fail to establish a cause of action." **Id.** (quoting **Webb**, 346 S.W.3d at 426 (alteration in original) (internal quotation marks omitted)). The resolution of such a motion is determined by examining the pleadings alone. **Id.**
> In adjudicating such motions, courts "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." **Id.** (citing **Webb**, 346 S.W.3d at 426; **Cullum v. McCool**, 432 S.W.3d 829, 832 (Tenn. 2013)). A motion to dismiss should be granted only if it appears that "'the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'" **Webb**, 346 S.W.3d at 426 (quoting **Crews v. Buckman Labs. Int'l, Inc.**, 78 S.W.3d 852, 857 (Tenn. 2002)). We review a lower court's decision on such a motion de novo without any presumption of correctness. **Phillips**, 442 S.W.3d at 237 (citing **Cullum**, 432 S.W.3d at 832).

**Ellithorpe v. Weismark**, 479 S.W.3d 818, 824 (Tenn. 2015). A trial court's decision to grant a motion to dismiss on the basis of a lack of subject matter jurisdiction is also reviewed under the de novo standard. **Northland Ins. Co. v. State**, 33 S.W.3d 727, 729 (Tenn. 2000). Unlike a motion to dismiss for failure to state a claim, a trial court may consider matters outside the pleadings in ruling on a motion to dismiss for lack of subject matter jurisdiction without converting the motion to a motion for summary judgment. **Northland Ins. Co. v. State**, 33 S.W.3d 727, 729 (Tenn. 2000); *see also* Tenn. R. Civ. P. 12.02 ("If, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and

not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]").

## Discussion

## I.

The parties devote much of their argument to the question of whether Plaintiff's challenge to the abandonment ordinance was properly brought as a declaratory judgment action or should have been treated as a petition for a writ of certiorari. The trial court ruled that Plaintiff's action was governed by the sixty-day statute of limitations applicable to writs of certiorari, rather than the statutes of limitations applicable in declaratory judgment actions. Plaintiff disagrees and contends that she properly brought this action as a declaratory judgment action. On the other hand, the City asserts that the trial court correctly held that Plaintiff's claim was barred by the writ of certiorari statute of limitations, or in the alternative, that any declaratory judgment action was also untimely and/or failed to include necessary parties.

We begin first with the guidelines governing petitions for writs of certiorari.

Pursuant to Tennessee Code Annotated section 27-8-101,

> The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy.

This statute is commonly referred to as the common law writ of certiorari. *State v. Farris*, 562 S.W.3d 432, 441 (Tenn. Ct. App. Mar. 9, 2018), *perm. app. denied* (Tenn. July 19, 2018) (citing *Admin. Res., Inc., v. Tenn. Dep't of Commerce*, No. M2010-01199-COA-R3-CV, 2011 WL 2176387, at *5 (Tenn. Ct. App. June 2, 2011)) (noting that "the common law writ [is] codified at [Tennessee Code Annotated Section] 27-8-101"). Land use decisions that are subject to writ of certiorari review are generally reviewed under the common law writ of certiorari. *See, e.g., id.* at 444–45 (holding that the common law writ of certiorari was the proper vehicle for the denial of a building permit); *Royal Properties, Inc. v. City of Knoxville*, 490 S.W.3d 1, 6 (Tenn. Ct. App. 2015) (applying the common law writ of certiorari to an appeal of a planning commission's decision); *Steppach v. Thomas*, 346 S.W.3d 488, 502 (Tenn. Ct. App. 2011) (applying the common law writ of certiorari standard to an administrative land use decision by the city).

A petition seeking a writ of certiorari must be filed within sixty days of "the entry of the order or judgment" in dispute. Tenn. Code Ann. § 27-9-102; *see also Gore v.*

***Tennessee Dep't of Correction***, 132 S.W.3d 369, 379 (Tenn. Ct. App. 2003) ("This time limit applies to both common law and statutory writs of certiorari."). "Failure to file within the statutory time limit deprives the court of subject matter jurisdiction." ***Gore***, 132 S.W.3d at 379 (citing ***Wheeler v. City of Memphis***, 685 S.W.2d 4 (Tenn. Ct. App. 1984)). "The petition for certiorari may be sworn to before the clerk of the circuit court, the judge, any judge of the court of general sessions, or a notary public, and shall state that it is the first application for the writ." Tenn. Code Ann. § 27-8-106. Like the sixty-day time limit, failure to comply with section 27-8-106 deprives the trial court of subject matter jurisdiction to adjudicate the petition. *See* ***Blair v. Tennessee Bd. of Prob. & Parole***, 246 S.W.3d 38, 40–41 (Tenn. Ct. App. 2007) (citing ***Depew v. King's Inc.***, 197 Tenn. 569, 276 S.W.2d 728, 729 (Tenn. 1955)) ("Jurisdiction of this Court is also predicated upon the verification requirement in section 27-8-106. Neither the trial court nor the appellate court acquires jurisdiction over the petition unless it is verified under this section.").

Plaintiff does not dispute that she failed to comply with the time period applicable to petitions for writs of certiorari. Rather, Plaintiff contends that this action does not involve such a petition, but instead involves an action seeking a declaratory judgment. Pursuant to Tennessee Code Annotated section 29-14-102(a), "[c]ourts of record within their respective jurisdictions have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Under this authority, "[a]ny person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder." Tenn. Code Ann. § 29-14-103.

"[A] declaratory judgment action is a mere procedural device by which various types of substantive claims may be asserted." ***Brackin v. Sumner County***, 814 S.W.2d 57, 60–61 (Tenn. 1991). As such, actions under this chapter "'are not governed by specific statutes of limitations.'" ***Nunn v. Tennessee Dep't of Correction***, 547 S.W.3d 163, 177 (Tenn. Ct. App. 2017), *perm. app. denied* (Tenn. Mar. 15, 2018), *cert. denied*, 139 S. Ct. 446, 202 L. Ed. 2d 315 (2018) (quoting ***Newsome v. White***, No. M2001-03014-COA-R3-CV, 2003 WL 22994288, at *4 (Tenn. Ct. App. Dec. 22, 2003)). When, however, "'a petition for declaratory judgment seeks the same relief that is otherwise available in another statutory proceeding, then the filing of the declaratory judgment is governed by the statute of limitations governing that statutory proceeding.'" ***Id.*** (citing ***Newsome***, 2003 WL 22994288, at *4 (quoting ***Dehoff v. Attorney General***, 564 S.W.2d 361, 363 (Tenn. 1978))). "For a declaratory judgment action, the appropriate statute of limitations depends on the nature of the substantive claims sought to be asserted." ***Id.*** at 175 (citing ***Taylor v. Reynolds***, No. 93-552-I, 1994 WL 256286, at *1 (Tenn. Ct. App. June 10, 1994)). "'Where no specific statute of limitations can be identified,'" however, "'the general ten-year statute of limitations applies.'" ***Id.*** at 188 (quoting ***Witty v.***

*Cantrell*, No. E2010-02303-COA-R3-CV, 2011 WL 2570754, at *9 (Tenn. Ct. App. June 29, 2011)).

> The distinction between these two types of actions is subtle but important: Actions for certiorari and those for declaratory judgment are distinct forms of action to which a petitioner may have recourse, depending on the nature of the decision maker involved or of the governmental action from which the petitioner seeks relief. An action for certiorari is the proper remedy for a party aggrieved by the final order or judgment of an administrative body which has acted in a judicial or a quasi-judicial capacity to apply existing law to the facts of a particular case.

*Walker v. Metro. Bd. Of Parks and Recreation*, No. M2007-01701-COA-R3-CV, 2009 WL 5178435, at *8 (Tenn. Ct. App. Dec. 30, 2009). In determining what type of action is at issue, we are not bound by the caption or description provided by the plaintiff, but must instead consider what type of claim is alleged "in reality." *Brackin*, 814 S.W.2d at 60. As we have explained,

> The distinction between declaratory judgment actions and those brought as common law writ of certiorari is that 'determinations . . . [that] are administrative determinations, judicial or quasi-judicial in nature, and are accompanied by a record of the evidence produced and the proceedings had in a particular case' are reviewable by certiorari, "whereas, the enactment of ordinances or resolutions, creating or amending zoning regulations, is a legislative, rather than an administrative, action and is not ordinarily accompanied by a record of the evidence, as is the case of an administrative hearing."

*Walker*, 2009 WL 5178435, at *8 (quoting *Fallin v. Knox Cty. Bd. of Comm'rs*, 656 S.W.2d 338, 342 (Tenn. 1983)); *see also Davis Grp. (MC), Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 912 S.W.2d 178, 180 (Tenn. Ct. App. 1995). "Where the relief sought in a declaratory judgment action is the same relief that is available under common law writ of certiorari, the action will be treated as a certiorari action, and the requirements of such an action will be applied." *State ex rel. Moore & Assocs., Inc. v. West*, 246 S.W.3d 569, 581 (Tenn. Ct. App. 2005). As such, where an action involves the application or execution of a law already in existence, the writ of certiorari's requirements will apply to the petition. *Id.* at 576 ("Decisions of those boards are administrative or quasi-judicial decisions that involve applying the facts of the situation before the board to the applicable ordinance or requirement, i.e., enforcing, applying, or executing a law already in existence.").

At oral argument, Plaintiff conceded that if the common law writ of certiorari was the proper vehicle for challenging the City's action in this case, her action is barred by

failure to comply with the sixty-day time period provided by section 27-9-102.[7] *See Gore*, 132 S.W.3d at 379. We note, however, that the trial court ruled that even where the declaratory judgment action was the proper vehicle for bringing Plaintiff's claims, the court was likewise deprived of jurisdiction to consider this action. Because we conclude that the trial court properly dismissed any purported claim based on the Declaratory Judgment Act, as discussed in detail *infra*, we conclude that it is unnecessary to determine which action was the proper vehicle for the claims in this case: in either event, the trial court properly dismissed the claims for lack of subject matter jurisdiction. We therefore proceed to consider whether the trial court had jurisdiction to consider any purported declaratory judgment action.

## II.

Like writ of certiorari actions, declaratory judgment actions are subject to specific statutory requirements. *See generally* Tenn. Code Ann. § 29-14-102 (governing

_____

[7] We note that, in her brief, Plaintiff asserts that her failure to comply with the section 27-9-102 limitations period is excused because the ordinance at issue is void, citing **Edwards v. Allen**, 216 S.W.3d 278, 293 (Tenn. 2007) ("Because the ordinance is void ab initio, a statute of limitations is no defense."). In **Allen**, however, the Tennessee Supreme Court excused the plaintiff from complying with the applicable statutes of limitation after holding that the defendant county commission lacked jurisdiction to amend its zoning ordinance under the circumstances. *See id.* ("Because the altered amendment was substantial and was not returned to the planning commission for further consideration, the Rutherford County Board of Commission had no jurisdiction to rezone ninety acres when the public notice described ten."). In **Edwards**, however, the trial court declined to apply the sixty-day statute of limitations applicable to a writ of certiorari. *See id.* at 282 (noting that "the chancellor concluded that the suit was filed after the ten-year statute of limitations, the longest possible period"); *see also* **Fallin v. Knox Cty. Bd. of Comm'rs**, 656 S.W.2d 338, 342 (Tenn. 1983) ("When a municipal governing body acts under its delegated police powers either to adopt or amend a zoning ordinance, it acts in a legislative capacity . . . ."). Thus, it is unclear whether the **Edwards** holding is applicable to the limitations period in section 27-9-102. *Compare* **Estate of Brown**, 402 S.W.3d 193, 198–99 (Tenn. 2013) ("True statutes of limitations do not constitute grants of subject matter jurisdiction but rather restrict the powers of a court to act on a claim over which it has subject matter jurisdiction. A statute of limitations defense challenges the sufficiency of a particular claim, not the subject matter jurisdiction of the court in which the claim is filed.") (citations omitted), *with* **Gore**, 132 S.W.3d at 379 (holding that failure to comply with the section 27-9-102 limitations period deprives the court of subject matter jurisdiction); *cf.* **Wheatley v. Martineau**, No. M2013-01704-COA-R3-CV, 2014 WL 1512822, at *4 (Tenn. Ct. App. Apr. 15, 2014) (ruling that the plaintiff's failure to comply with section 27-9-102 deprived the court of jurisdiction to consider a challenge to a 2008 permit, even though the plaintiff asserted that the action was "null and void"). Plaintiff does not specifically address the applicability of the **Edwards** holding to a petition for a writ of certiorari in her appellate brief.

Moreover, neither Plaintiff's brief nor her amended complaint contain similar arguments that the City somehow lacked subject matter jurisdiction to determine the right-of-way abandonment issue, thereby rendering the statute of limitations irrelevant. "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." **Sneed v. Bd. of Prof'l Responsibility of Supreme Court**, 301 S.W.3d 603, 615 (Tenn. 2010). Given Plaintiff's failure to properly brief this issue, we decline to consider it.

declaratory judgment actions). In particular, section 29-14-107(a) provides: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings." "Parties seeking declaratory relief must [] satisfy the more specific requirements of the Declaratory Judgments Act before the courts have jurisdiction to grant declaratory relief." *Huntsville Util. Dist. of Scott Cty., Tenn. v. Gen. Tr. Co.*, 839 S.W.2d 397, 403 (Tenn. Ct. App. 1992). As a consequence, this Court has previously explained that "'[t]he non-joinder of necessary parties is fatal on the question of justiciability, which, in a suit for a declaratory judgment, is a necessary condition of judicial relief.'" *Id.* at 400 (Tenn. Ct. App. 1992) (quoting *Wright v. Nashville Gas & Heating Co.*, 183 Tenn. 594, 598, 194 S.W.2d 459, 461 (Tenn. 1946)).

"Proper parties include all those who must be bound by the decree in order to make it effective and to avoid the recurrence of additional litigation on the same subject." *Byrn v. Metro. Bd. of Pub. Educ.*, No. 01-A-019003-CV-00124, 1991 WL 7806, at *5 (Tenn. Ct. App. Jan. 30, 1991) (citing *State ex rel. Dossett v. Obion County*, 188 Tenn. 538, 552-53, 221 S.W.2d 705, 711 (Tenn. 1949)). "This does not mean, however, all persons who might be remotely affected need b[e] joined." *Shelby Cty. Bd. of Comm'rs v. Shelby Cty. Quarterly Court*, 216 Tenn. 470, 480, 392 S.W.2d 935, 940 (Tenn. 1965). "[I]dentifying the necessary parties in a declaratory judgment action is fact intensive and depends on the type of case and issues involved." *Adler v. Double Eagle Properties Holdings, LLC*, No. W2010-01412-COA-R3-CV, 2011 WL 862948, at *5 (Tenn. Ct. App. Mar. 14, 2011). Thus, "the trial court has discretion to determine who should be made parties to proceedings for declaratory judgment as well as whether to grant or deny a declaratory judgment." *Timmins v. Lindsey*, 310 S.W.3d 834, 839 (Tenn. Ct. App. 2009) (citing *Huntsville Utility*, 839 S.W.2d at 399). "Absent an abuse of that discretion, a declaration should not be disturbed on appeal." *Id.* (citing *Huntsville Utility*, 839 S.W.2d at 399).

The trial court in this case determined that the other landowners affected by the alley abandonment were indispensible parties under section 29-14-107(a). Plaintiff asserts that Tennessee caselaw supports her argument that the other landowners were not indispensible parties because their interests were protected by either Plaintiff or the City in this litigation. We conclude that Plaintiff's reliance on Tennessee caselaw in support of her argument is misplaced. For example, Plaintiff cites *Tennessee Farmers Mut. Ins. Co. v. Debruce*, No. E2017-02078-COA-R3-CV, 2018 WL 3773912 (Tenn. Ct. App. Aug. 9, 2018), *perm. app. granted* (Jan. 16, 2019), for the proposition that "[o]nly a party who will be directly affected by a decree and whose interest is not represented by any other party to the litigation is an indispensable or necessary party, that is, one without which no valid decree may be entered settling the rights between the parties that are before the Court[.]" *Id.* at *3, n.4 (citing *Brewer v. Lawson*, 569 S.W.2d 856, 858 (Tenn. Ct. App. 1978)) The *Debruce* court, however, did not cite this proposition as substantive law applicable in the declaratory judgment context but merely as an explanation of the use of

the terms "necessary party" and "indispensable party." *Id.* ("The courts of this state have traditionally utilized the terms 'necessary party' and 'indispensable party' interchangeably."). Indeed, the case cited by the ***Debruce*** Court in support of this proposition did not involve necessary parties under section 29-14-107, but in a typical civil action governed by the Tennessee Rules of Civil Procedure. *See **Brewer***, 569 S.W.2d at 858 (in a case involving quiet title and the award of damages with no mention of a request for a declaratory judgment). From our review, cases applying this language generally involve necessary parties under Rule 19.01 of the Tennessee Rules of Civil Procedure,[8] rather than section 29-14-107. *See **Raines Bros. v. Chitwood***, No. E2013-02232-COA-R3-CV, 2014 WL 3029274, at *6 (Tenn. Ct. App. July 3, 2014) (citing the ***Brewer*** language in the context of Rule 19.01); ***Ralston v. Hobbs***, 306 S.W.3d 213, 221 (Tenn. Ct. App. 2009) (same); ***Moore v. Teddleton***, No. W2005-02746-COA-R3-CV, 2006 WL 3199273, at *6 (Tenn. Ct. App. Nov. 7, 2006) (same); ***In re Estate of Bundren***, No. E2003-02746-COA-R3-CV, 2004 WL 2709154, at *3 (Tenn. Ct. App. Nov. 23, 2004) (citing the ***Brewer*** language in the context of Rule 19.01, but holding the issue was waived); ***Hemontolor v. Wilson Cty. Bd. of Zoning Appeals***, 883 S.W.2d 613, 618 (Tenn. Ct. App. 1994) (citing the ***Brewer*** language as applicable in writ of certiorari action, rather than a declaratory judgment action governed by section 29-14-107); ***Gilley v. Jernigan***, 597 S.W.2d 313, 318 (Tenn. Ct. App. 1979) (citing the ***Brewer*** language in an ejectment action); *cf.* ***Shepherd v. Maximus Entm't Grp., Inc.***, No. M2003-01664-COA-R3-CV, 2005 WL 2138241, at *8 (Tenn. Ct. App. Sept. 1, 2005) (citing a similar rule taken from ***Gilley*** in the context of Rule 19.01); ***Horton v. Tennessee Dep't of Correction***, No. M1999-02798-COA-R3-CV, 2002 WL 31126656, at *4 (Tenn. Ct. App. Sept. 26, 2002) (same). Section 29-14-107, however, "imposes stricter requirements than those imposed generally by the Tennessee Rules of Civil Procedure requiring the joinder of indispensable parties in all types of cases." ***Timmins***, 310 S.W.3d at 839 (citing Tenn. R. Civ. P. 19.01 & 19.02). Cases analyzing whether a party was indispensible outside of the declaratory judgment context therefore offer little guidance in the case-at-bar.

Our research has revealed a far more analogous case, ***Largen v. City of Harriman***, No. E2017-01501-COA-R3-CV, 2018 WL 3458280 (Tenn. Ct. App. July 17, 2018), *no perm. app filed*. In ***Largen***, a property owner filed a declaratory judgment action to

---

[8] Rule 19.01 provides as follows:

A person who is subject to service of process shall be joined as a party if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person properly should join as a plaintiff but refuses to do so, he or she may be made a defendant, or in a proper case, an involuntary plaintiff.

challenge an annexation. *Id.* at \*1. In his pleadings, he admitted "that there were 'untold numbers of other property owners who are in similar situations' and who may be necessary parties." *Id.* at \*9. As such, the defendant-city filed a motion to dismiss, arguing inter alia, that the trial court was deprived of jurisdiction over any declaratory judgment action by the plaintiff-owner's failure to join indispensible parties. The trial court found that the lack of indispensible parties could expose the defendant-city to multiple lawsuits and dismissed the complaint. *Id.*

This Court found no abuse of discretion in the trial court's determination as to necessary parties. *Id.* In reaching this result, we rejected the plaintiff-owner's contention that "the presence or omission of additional parties would not change the facts of the case." *Id.* As we explained, such a requirement was not necessary under section 29-14-107(a), which merely requires that other parties have an interest that could be affected by the sought after declaration, rather than that "a party has material evidence to contribute." We also rejected the plaintiff-owner's contention that he could bypass the necessary parties procedure because he alleged that the ordinance at issue was void. Instead, we held that the plaintiff-owner "cannot bypass due process merely because he asserts that declaratory judgment in his favor is a foregone conclusion." *Id.* Under these circumstances, we concluded that the trial court did not "abuse[] its discretion by applying an incorrect legal standard, coming to an illogical conclusion, or basing its finding on an erroneous assessment of the evidence." *Id.* (citing ***Lee Med., Inc. v. Beecher***, 312 S.W.3d 515, 524 (Tenn. 2010)).

The same is true in this case. Clearly, all the landowners abutting the alley at issue would be affected by a declaration that the ordinance abandoning the right-of-way is invalid to the same extent that a declaration invalidating an annexation ordinance would affect property owners covered by the ordinance. *Id.* This is particularly true of Ms. Vickers, the landowner who initially sought abandonment of the alley in order to make additions to her property, as well as all those other affected owners that supported the alley abandonment. Plaintiff even admits in her brief that a "separate cause of action" may be required in which "abutting landowners would be necessary parties to the cause of action" should the ordinance be declared valid. The purpose of the Declaratory Judgment Act, however, is to settle uncertainties and avoid "the specter of recurring litigation." *See* Tenn. Code Ann. § 29-14-113 ("This chapter is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and is to be liberally construed and administered."); ***Reed v. Town of Louisville***, No. E2006-01637-COA-R3-CV, 2007 WL 816521, at \*2 (Tenn. Ct. App. Mar. 19, 2007) ("This raises the specter of recurring litigation on the same subject, and declaratory judgment may be refused where, if rendered, it would not terminate the uncertainty or controversy giving rise to the proceedings."). The express purpose of the Declaratory Judgment Act can therefore only be accomplished if all abutting landowners are made parties to this action. Moreover, we likewise reject Plaintiff's contention that her allegation that the ordinance at issue is void

excuses her from complying with the mandates of section 29-14-107(a), given that a similar argument was rejected in *Largen*. *Largen*, 2018 WL 3458280, at *9. Likewise, we discern nothing in Section 29-14-107(a) that provides that joinder of parties that will be affected by the declaration is excused so long as those parties' interests are in line with another litigant already made a party to the suit.

In sum, Plaintiff has failed to show that the trial court applied an incorrect legal standard, came to an illogical conclusion, or based its decision on a clearly erroneous assessment of the evidence. *Lee Med.*, 312 S.W.3d at 524. As such, to the extent that Plaintiff's claims were properly brought as a declaratory judgment action, the trial court did not abuse its discretion in dismissing those claims due to lack of subject matter jurisdiction. *See* *Largen*, 2018 WL 3458280, at *9 ("[W]e determine that the other affected landowners were indispensable parties to [the plaintiff's] complaint and that their non-joinder deprived the trial court of subject matter jurisdiction over the instant case.").[9] Consequently, regardless of whether Plaintiff's claim to invalidate the abandonment ordinance was properly brought as a declaratory judgment action or a petition for a writ of certiorari, the trial court simply did not have subject matter jurisdiction to adjudicate that claim.

### III.

Plaintiff next argues that her claim for inverse condemnation was improperly dismissed as untimely. Even assuming *arguendo* that Plaintiff's inverse condemnation claim is separate and distinct from the writ of certiorari and declaratory judgment claims resolved *supra*,[10] we conclude that the trial court did not err in dismissing this claim as untimely.[11]

---

[9] Any issues related to the timeliness of the declaratory judgment action are therefore pretermitted.

[10] We note that the City does not argue in this appeal that to the extent that Plaintiff's inverse condemnation claim is a distinct claim seeking damages, it should be dismissed as improperly joined with an action seeking a common law writ of certiorari. *See* *Duracap Asphalt Paving Co. Inc. v. City of Oak Ridge*, No. E2017-02414-COA-R3-CV, 2018 WL 4236501, at *2 (Tenn. Ct. App. Sept. 6, 2018) ("Because a petition for a common law writ of certiorari may not be joined with causes of action invoking the original jurisdiction of the trial court, the court dismissed Duracap's claims for declaratory relief, equitable relief, and damages."); *Brown v. Tennessee Bd. of Prob. & Parole*, No. M2005-00449-COA-R3-CV, 2007 WL 2097548, at *4 (Tenn. Ct. App. July 6, 2007) (citing *Byram v. City of Brentwood*, 833 S.W.2d 500, 502 (Tenn. Ct. App. 1991)) ("Where an original action for damages has been joined with a petition for writ of certiorari, the claim for damages should be dismissed at the very outset."). *But see* *Wimley v. Rudolph*, 931 S.W.2d 513, 516 (Tenn. 1996) (holding that this doctrine should only be applied when the two claims seek inconsistent relief). From our review, this situation has never been expressly described as depriving the court of subject matter jurisdiction to adjudicate the joined claims, but rather a doctrine based on the difficulty of adjudicating the two claims in one action. *See, e.g.,* *Duracap*, 2018 WL 4236501, at *2 (not expressly holding that this doctrine deprives the trial court of subject matter jurisdiction); *State v. Farris*, 562 S.W.3d 432, 447 (Tenn. Ct. App. Mar. 9, 2018), *perm. app. denied* (Tenn. July 19, 2018) (same); *Byram*, 833 S.W.2d at 502 (same); *Goodwin v. Metropolitan Board of*

"Inverse condemnation is the popular description of a cause of action against a governmental defendant to recover the value of the property which has been taken in fact by a governmental defendant even though no final exercise of the power of eminent domain has been attempted by the government." *Johnson v. City of Greeneville*, 435 S.W.2d 476, 478 (Tenn. 1968); *see also Phillips v. Montgomery Cty.*, 442 S.W.3d 233, 244 (Tenn. 2014) (holding that the Tennessee Constitution's protection against takings is coextensive with the Takings Clause of the Fifth Amendment to the United States Constitution). Inverse condemnation claims are subject to a one-year statute of limitations codified at Tennessee Code Annotated section 29-16-124, which provides that actions involving inverse condemnation "shall be commenced within twelve (12) months after the land has been actually taken possession of, and the work of the proposed internal improvement begun[.]" Although "this statute is couched in terms of physical takings, it applies equally to all takings claims." *B & B Enters. of Wilson Cty., LLC v. City of Lebanon*, 318 S.W.3d 839, 846 (Tenn. 2010) (citing *STS/BAC Joint Venture v. City of Mt. Juliet*, No. M2003-00171-COA-R3-CV, 2004 WL 2752809, at *8 (Tenn. Ct. App. Dec. 1, 2004), *perm. app. dismissed* (Tenn. Apr. 29, 2005)). Moreover, the Tennessee Supreme Court has previously held that the one-year statute of limitations above is applicable in the context of the closing of a road. *See Shelby Cty. v. Barden*, 527 S.W.2d 124, 127 (Tenn. 1975).

For the purposes of section 29-16-124, "a 'taking' occurs when the 'injury to . . . property . . . reasonably appears . . . to be a permanent injury rather than a temporary one.'" *B & B Enters.*, 318 S.W.3d at 846 (citing *Knox Cnty. v. Moncier*, 224 Tenn. 361, 367, 455 S.W.2d 153, 156 (Tenn. 1970)). An inverse condemnation cause of action therefore accrues when the plaintiff "realizes or should reasonably realize that his property has sustained an injury which is permanent in nature." *Moncier*, 455 S.W.2d at 156; *see also Bobo v. City of Jackson*, 511 S.W.3d 14, 20 (Tenn. Ct. App. 2015) ("The occurrence of a "taking" or permanent injury within the meaning of the statute is not necessarily contemporaneous to the manifested harm about which the plaintiff ultimately complains. If sufficient facts exist to show that the plaintiff should reasonably realize that some type of permanent injury has occurred, the running of the limitation period will commence at that point."). In the context of a regulatory taking claim, the Tennessee Supreme Court has expressly held that "'the triggering event [for the running of the statute of limitations] . . . is the date the landowner knew that the government was

---

*Health*, 656 S.W.2d 383, 386–87 (Tenn. Ct. App. 1983) (same). Given the City's failure to raise this argument, as well as our decision not to analyze whether this action was properly brought as a writ of certiorari or declaratory judgment action, we decline to address this issue.

[11] In this case, the trial court found that Plaintiff sufficiently alleged a taking under applicable law. *Cf. Cash & Carry Lumber Co. v. Olgiati*, 215 Tenn. 287, 293, 385 S.W.2d 115, 118 (Tenn. 1964) ("In the instant case, the proper municipal authority has by ordinance abandoned the street in question. If complainant's property has thereby been taken, the remedy is at law in an action for compensation."). The City takes no issue with this ruling on appeal and we therefore do not address it.

depriving it of the economic use of its property.'" ***B & B Enters.***, 318 S.W.3d at 846 (quoting ***STS/BAC Joint Venture***, 2004 WL 2752809, at *9).

Plaintiff asserts that the statute of limitations did not begin to run in this case until January 3, 2017, the date that the ordinance abandoning the right-of-way actually went into effect. In support, Plaintiff distinguishes between physical takings and regulatory takings and appears to argue that this case involves a physical taking, rather than a regulatory taking. Respectfully, we disagree.

The United States Supreme Court has previously recognized a distinction between physical takings and regulatory takings. *See generally* ***Brown v. Legal Found. of Washington***, 538 U.S. 216, 233, 123 S. Ct. 1406, 1417, 155 L. Ed. 2d 376 (2003). A regulatory taking generally encompasses "governmental action which diminishes private property rights, but which does not amount to a direct appropriation or physical invasion of private property[.]" ***Phillips***, 442 S.W.3d at 239 (citing ***Lingle v. Chevron U.S.A. Inc.,*** 544 U.S. 528, 537, 125 S. Ct. 2074, 2081, 161 L. Ed. 2d 876 (2005)). "A regulatory taking results when a governmental regulation places such a burdensome restriction on a landowner's use of its property that the government has for all intents and purposes 'taken' the property." ***B & B Enters.***, 318 S.W.3d at 845, n.5. In contrast, a physical or actual taking involves the "physical appropriation of an owner's property[.]" *Black's Law Dictionary* 1592 (9th ed. 2009).

The undisputed facts of this case, taken from Plaintiff's amended complaint and the documents attached thereto, establish that there was no physical invasion or appropriation of Plaintiff's property. The decision to abandon the alley behind Plaintiff's property clearly involved a change in the City's law governing the alley at issue, which Plaintiff alleges has diminished the use and value of her property. In fact, unlike a physical taking, in this case, Plaintiff was left with more property following the City's decision to abandon the alley, rather than less. *See* ***State v. Taylor***, 107 Tenn. 455, 64 S.W. 766, 768–69 (1901) ("[I]ts action in that connection was, nevertheless, in legal contemplation and in fact, an abandonment of its easement . . . , and through that abandonment the strip of ground in question ceased to be a part of the public street, and by operation of law reverted to the owner of the ultimate fee.").The injury, as alleged by Plaintiff is not the loss of the use of her property due to a physical invasion by the City, but the loss of the use of her property for the specific purpose of ingress and egress caused by the City's reclassification of the property as a right-of-way. We must conclude that this action involves a regulatory taking. As such, cases and law concerning the statute of limitations as applied to regulatory takings are helpful to our analysis of this issue.

One such case is ***B & B Enterprises of Wilson County, LLC v. City of Lebanon***. In ***B & B Enterprises***, the plaintiff asserted an inverse condemnation claim predicated on an alleged regulatory taking. 318 S.W.3d at 845. Specifically, the plaintiff landowner

alleged that a regulatory taking occurred when the defendant-city refused to approve his subdivision plan, despite the landowner's compliance with all applicable land use requirements. *Id.* at 843. After approving of two initial subdivision plans, the planning commission declined to approve the final subdivision plans at issue on January 22, 2002, and then declined to reconsider the decision on February 26, 2002. The plaintiff thereafter filed a petition for a writ of certiorari regarding the decision, arguing that it was arbitrary and capricious. Both the trial court and this Court agreed. *Id.* (citing *B & B Enters. of Wilson Co., LLC v. City of Lebanon*, No. M2003-00267-COA-R3-CV, 2004 WL 2916141, at \*7 (Tenn. Ct. App. Dec. 16, 2004)).

On December 2, 2005, the plaintiff landowner filed a separate complaint for damages on the theory of inverse condemnation. *Id.* at 844. Eventually, the defendant-city filed a motion to dismiss the inverse condemnation claim on the basis of the expiration of the statute of limitation. *Id.* The trial court denied the motion, ruling that the inverse condemnation claim did not accrue until the Court of Appeals rendered its decision on December 16, 2004. *Id.* The trial court and this Court thereafter granted the defendant-city's application for an interlocutory appeal. *Id.* We reversed the decision of the trial court and held that the statute of limitations accrued, at the latest, when the initial petition for a writ of certiorari was filed, April 12, 2002. *Id.* (citing *B & B Enters. of Wilson Cnty., LLC v. City of Lebanon*, No. M2008-00572-COA-R9-CV, 2009 WL 130188, at \*3 (Tenn. Ct. App. Jan. 14, 2009)).

The Tennessee Supreme Court, however, disagreed with both the trial court and this Court as to the proper accrual date for the plaintiff's inverse condemnation claim. *Id.* at 847. First, the court noted that the plaintiff did not dispute that it had actual notice of the planning commission's final decision on February 26, 2002, to decline approval of the final subdivision plans. *Id.* The court further concluded that this was the date the planning commissions' action should be considered "permanent" notwithstanding that judicial review was sought of the commission's decision. *Id.* As the Court explained, "'[a] final decision by the responsible state agency informs the constitutional determination whether a regulation has deprived a landowner of 'all economically beneficial use' of the property, or defeated the reasonable investment-backed expectations of the landowner to the extent that a taking has occurred . . . .'" *Id.* (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 618, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) (citations omitted)); *see also e.g., Bobo*, 511 S.W.3d at 20 (holding that the plaintiff's inverse condemnation action accrued on the date that she acquired property with notice that it was subject to a demolition order, not the date the demolition actually occurred). The date of the final municipal decision, therefore, was the date upon which the inverse condemnation action accrued, and therefore, the date the applicable statute of limitations began to run.

The same is true in this case. Here, the undisputed facts in the record show that Plaintiff had actual notice of the City's final decision to approve the right-of-way

abandonment on December 20, 2016. Indeed, Plaintiff's own amended complaint asserts that the City's "decision [to pass the ordinance closing the alley] was final, the property deprivation permanent and no further appeals to the City government available." Although the alley was not scheduled to be abandoned until two weeks later, it was on this date that Plaintiff should have realized that her property suffered an injury that was permanent in nature. *See Moncier*, 455 S.W.2d at 156. Stated more succinctly, December 20, 2016, is "the date [Plaintiff] knew that the government was depriving it of the economic use of its property." *B & B Enters.*, 318 S.W.3d at 846. Because Plaintiff's complaint for inverse condemnation was filed more than one-year following the date her cause of action accrued, it is untimely. *See* Tenn. Code Ann. § 29-16-124.

## IV.

Finally, Plaintiff contends that the trial court erred in dismissing her complaint without addressing her claims for procedural due process.[12] After our review of the trial court's order, it does appear that the trial court dismissed Plaintiff's complaint in its entirety without specifically ruling on this claim. Although we are inclined to rule that any due process allegations brought in an attempt to invalidate the ordinance are barred by the dismissal of Plaintiff's writ of certiorari and declaratory judgment actions *supra*, it appears that the City has not taken this position on appeal.[13] Instead, the City argues that this claim is barred on the basis of: (1) the expiration of the Tennessee Governmental Tort Liability Act statute of limitations; and (2) its contention that the City met all procedural due process requirements with regard to the passage of the ordinance. As previously discussed, it is not our role to craft a litigant's argument for it. *See Sneed*, 301 S.W.3d at 615. Because the trial court did not specifically rule on this claim or these defenses, we conclude that the appropriate remedy is to vacate the dismissal of Plaintiff's procedural due process claim and remand to the trial court for reconsideration. *Cf. Whalum v. Shelby Cty. Election Comm'n*, No. W2013-02076-COA-R3-CV, 2014 WL 4919601, at *3 (Tenn. Ct. App. Sept. 30, 2014) (citing *Reid v. Reid*, 388 S.W.3d 292, 294 (Tenn. Ct. App. 2012) ("The jurisdiction of this Court is appellate only; we cannot hear proof and decide the merits of the parties' allegations in the first instance.")) ("[W]e are constrained to only review those issues that have been decided by the trial court in the first instance.").

---

[12] Although Plaintiff's amended complaint, and to a lesser extent, this portion of her brief, also discuss substantive due process and the Open Meetings Act, Plaintiff did not designate the dismissal of her substantive due process claim or Open Meetings Act claim as issues in her brief. As such, they are waived. *See Forbess v. Forbess*, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011) (citing *Childress v. Union Realty Co.,* 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002)) ("We may consider an issue waived where it is argued in the brief but not designated as an issue.").

[13] In addition, Plaintiff's complaint is unclear if she is seeking damages related to these violations. Again, the City does not assert that to the extent that this claim is independent, it should be dismissed as improperly joined with a petition for a common law writ of certiorari. *See Duracap*, 2018 WL 4236501, at *2; *Brown*, 2007 WL 2097548, at *4.

**Conclusion**

The judgment of the Chancery Court for Hamilton County is affirmed in part and vacated in part. This cause is remanded to the trial court for further proceedings as are necessary and consistent with this opinion. Costs of this appeal are taxed to Appellant, Rebecca M. Little, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE